IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD OWENS, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 15-4911 (JBS-AMD) |
| PAUL ARMSTRONG et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Richard Owens, Plaintiff Pro Se
#702749/591885-B
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

Before the Court is Plaintiff Richard Owens' ("Plaintiff"), submission of a civil rights complaint pursuant to 42 U.S.C. §§ 1983, 1985, and 1986; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; and § 504 of the Rehabilitation Act ("RA"), codified at 29 U.S.C. § 794. At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below,

the Court concludes that the complaint will be dismissed in part and permitted to go forward in part. Additionally, Plaintiff's motion for the appointment of counsel, (Docket Entry 6), will be granted.

## II. BACKGROUND

Plaintiff brings this civil rights action against Defendants Paul Armstrong, J.S.C., Julie M. Marino, J.S.C., Anthony Mignella, and Raymond Black. The following factual allegations are taken from the complaint and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff is a convicted and sentenced state prisoner currently confined at South Woods State Prison ("SWSP"), Bridgeton, New Jersey. Defendant Mignella represented Plaintiff on an indictment out of Somerset County charging him with armed robbery and aggravated assault on a police officer. (Docket Entry 3 ¶ 12). Through discovery, Plaintiff and Defendant Mignella learned that the officer Plaintiff allegedly assaulted was Defendant Mignella's brother-in-law. (Docket Entry 3 ¶ 12(a)). Defendant Mignella's visits with Plaintiff became hostile, with Defendant Mignella being "verbally aggressive" towards Plaintiff. (Docket Entry 3 ¶ 12(a)).

Plaintiff filed a complaint with the warden of SWSP, which was referred to the Somerset County Prosecutor's Office. (Docket

2

Entry 3 ¶ 12(a)). Plaintiff ultimately declined to press charges out of fear of retaliation. (Docket Entry 3 ¶ 12(a)). At trial, the jury found Plaintiff not guilty of the assault on the officer by reason of mental incapacity. (Docket Entry 3 ¶ 13). Defendant Mignella was eventually promoted to Deputy Public Defender in the Somerset County Public Defender's Office, where he was in charge of evaluating pro se post-conviction relief ("PCR") petitions. (Docket Entry 3 ¶ 14).

Plaintiff was later indicted for first-degree armed robbery, N.J. STAT. ANN. § 2C:15-1; third-degree possession of a weapon for an unlawful purpose, N.J. STAT. ANN. § 2C:39-4(d); and third-degree receiving stolen property, N.J. STAT. ANN. § 2C:20-7. (Docket Entry 3 ¶ 15). He pled guilty to an offered eighteen years with a thirty-five percent parole disqualifier under New Jersey's No Early Release Act, N.J. STAT. ANN. § 2C:43-7.2. (Docket Entry 3 ¶ 16). He was sentenced in accordance with that agreement; however, Plaintiff appealed the sentence as being excessive in March 2012. (Docket Entry 3 ¶¶ 17-18). After the Appellate Division affirmed his sentence, he filed a PCR petition on March 4, 2013. (Docket Entry 3 ¶¶ 18-19).

According to the complaint, Defendant Mignella received a copy of Plaintiff's petition as the public defender in charge of reviewing PCR petitions, and proceeded to retaliate against him for escaping conviction on the assault against his brother-in-

3

law. (Docket Entry 3 ¶ 20). He assigned Plaintiff a pool attorney to represent Plaintiff in his PCR proceedings; however after discovering that the attorney had just passed the bar exam, Plaintiff petitioned the court for a new attorney and notified the Ethics Committee and Advisory Committee on Judicial Conduct ("AJAC"). (Docket Entry 3 ¶ 22).

Plaintiff was thereafter assigned a new pool attorney, who "'knowingly' accepted the Plaintiff's case with a 'conflict of interest' and was constantly undermining or discounting the Plaintiff's concerns and/or allegations of conflicting representation." (Docket Entry 3 ¶ 23).[1] This attorney withdrew from Plaintiff's matter "after [Plaintiff] exposed her ill-representation by 'sabotaging' a viable PCR claim of his by via [sic] video-conferencing from SWSP," and Plaintiff threatened to file a complaint with the Ethics Committee and the court. (Docket Entry 3 ¶ 25). Plaintiff's third pool attorney "refused to publicly promote [former counsel's] ill-representation against the Plaintiff to the Somerset County judiciary and/or Office of the Public Defender . . . ." (Docket Entry 3 ¶ 29).

Plaintiff thereafter began looking into retaining a private attorney. After receiving quotes for representation, he informed his current pool attorney that he wanted to retain private

---

[1] He does not indicate what this purported "conflict" entailed.

4

counsel with the proceeds of a federal civil action. (Docket Entry 3 ¶¶ 28, 30-31). Plaintiff did not receive any response from his pool attorney, (Docket Entry 3 ¶ 32), so he filed a pro se Motion for Self-Representation with the court. (Docket Entry 3 ¶ 33).

Simultaneously with this motion, Plaintiff requested he be given an accommodation under the ADA, permitting him to appear via video-conferencing. (Docket Entry 3 ¶ 33). On April 4, 2014, Plaintiff mailed the judge presiding over his PCR proceedings, Defendant Armstrong, forms documenting his disability in support of his request for accommodations. (Docket Entry 3 ¶ 34). Plaintiff wrote to the court again on May 9, 2014 with more medical documents, as well as to inquire why the Criminal Division Manager had not confirmed the filing of his motions. (Docket Entry 3 ¶ 35).

On May 15, 2014, Plaintiff wrote to Defendant Marino, the Presiding Criminal Judge in Somerset County, in order to find out why "the Criminal Division Manager, Defendant Armstrong, and the State decline[d] to respond to his letters or provide written confirmation or acknowledge" the filing of his motions. (Docket Entry 3 ¶ 36). According to Plaintiff, a SWSP library employee called the Criminal Division Manager, and was informed that none of the motions Plaintiff submitted pro se had been filed. (Docket Entry 3 ¶ 36(e)). Plaintiff requested Defendant

Marino adjourn the PCR hearing, scheduled for May 29, 2014, in order to give him a chance to retain private counsel. (Docket Entry 3 ¶ 36(f)).

Plaintiff mailed another letter to Defendant Marino the next day, May 16, again asking the court to postpone his hearing for two months so that he could retain private counsel. (Docket Entry 3 ¶ 37). He also asked her to vacate any existing transport writ for May 29, 2014, so that he would not have to travel to court via a prison transport van. (Docket Entry 3 ¶ 37). On May 23, 2014, however, Plaintiff was instructed by SWSP officials to get ready for his court trip. (Docket Entry 3 ¶ 28). Plaintiff was placed in a holding cell awaiting transport; however, he was unable to get into the van as it was not ADA-accessible. (Docket Entry 3 ¶¶ 39-40). He was shown a transportation order signed by Defendant Armstrong. (Docket Entry 3 ¶ 40). He was given a disciplinary charge for failure to keep a scheduled appointment, (Docket Entry 3 ¶ 41), and was sentenced to ten days in detention, (Docket Entry 3 ¶ 42).[2]

Plaintiff received a letter from a Senior Probation Officer dated May 23, 2014, indicating that all of Plaintiff's ex parte letters to the Court had been forwarded to his attorney. (Docket

---

[2] Plaintiff indicates this disciplinary charge was overturned by the New Jersey Superior Court, Appellate Division in *Owens v. NJDOC*, No. A-005447-13. (Docket Entry 3 ¶ 94).

Entry 3 ¶¶ 43-44). The letter further indicated the PCR hearing would not be adjourned, but the Court was aware that Plaintiff would not be in attendance. (Docket Entry 3 ¶ 44). Plaintiff later received a letter dated June 2, 2014, from the Criminal Division Manager that confirmed all of Plaintiff's letters to the court had been forwarded to his attorney without being filed. (Docket Entry 3 ¶ 45). The letter also stated: "'With respect to your PCR Hearing scheduled for May 29, 2014, please be advised the same was adjourned to allow time to determine if we are able to connect via video-conferencing with SWSP.'" (Docket Entry 3 ¶ 45). After receiving a response to this letter from Plaintiff, the Criminal Division Manager wrote another letter on July 16, 2014, stating:

> Please be advised that in reference to your previously mentioned court date of May 29, 2014, at that time courtroom technology was not functioning and could not connect to the video technology in South Woods Prison. In the interim we have been able to resolve the connectivity problems and plan to test the video connection between the courtroom and the prison shortly. Once we confirm that the video technology is fully functional we will scheduled a status hearing on your pending PCR Motion, which will include your Motion for Self-Representation.

(Docket Entry 3 ¶ 47). The status conference was scheduled for August 22, 2014 before Defendant Armstrong. (Docket Entry 3 ¶ 54). Plaintiff was informed he would be permitted to use video-conferencing. (Docket Entry 3 ¶ 54).

7

Prior to the status conference on August 22, Plaintiff conferred with his pool attorney via video-conferencing. (Docket Entry 3 ¶ 55). Plaintiff asked his attorney to request on the record an adjournment so that he could retain private counsel. (Docket Entry 3 ¶ 56). The pool attorney purportedly stated Defendant Armstrong would not permit Plaintiff to retain private counsel, and that "[i]t's either [the pool attorney] or self-representation. Those are the only two (2) options." (Docket Entry 3 ¶ 57).

Plaintiff thereafter filed this complaint alleging Defendants violated the ADA, RA, and 42 U.S.C. §§ 1983, 1985, and 1986 by failing to grant him an accommodation for his PCR hearing, interfering with his right to retain private counsel, and conspiring to deprive him of his right to his attorney of choice. Plaintiff seeks both money damages and injunctive relief in the form of an order requiring the Somerset County Judicial System to accommodate his disability by conducting all future proceedings via video-conference. (Docket Entry 3 ¶ 96(d)). He also requests this Court order Defendants "not to engage in future retaliatory treatment or conspire with NJDOC/SWSP and Rutgers University Behavior Health Care against the [Plaintiff] to cause him future injury for this civil suit." (Docket Entry 3 ¶ 96(d).

### III. STANDARD OF REVIEW

### A. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915A because Plaintiff is a prisoner seeking relief from a governmental employee or entity.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[3] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State

---

[3] "[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions." *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ....

§ 1983. Thus, to state a claim for relief under § 1983, a

plaintiff must allege, first, the violation of a right secured

by the Constitution or laws of the United States and, second,

that the alleged deprivation was committed or caused by a person

acting under color of state law. *See West v. Atkins*, 487 U.S.

42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.

2011); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

## C. The Americans with Disabilities Act and Rehabilitation Act

Under Title II of the ADA, "no qualified individual with a

disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132. To

establish a violation of Title II, Plaintiff must allege: "(1)

that he is a qualified individual; (2) with a disability; (3)

who was excluded from participation in or denied the benefits of

the services, programs, or activities of a public entity, or was

subjected to discrimination by any such entity; (4) by reason of

his disability." *Dahl v. Johnston*, 598 F. App'x 818, 819-20 (3d

Cir. 2015) (citing 42 U.S.C. § 12132); *see also Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 553 n.32 (3d Cir. 2007).

Section 504 of the RA has the same requirements as the ADA, "with the additional requirement that a plaintiff alleging a violation of the RA demonstrate that the violation was committed by a program or activity receiving 'Federal financial assistance.'" *Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa.*, 483 F. App'x 759, 762-63 (3d Cir. 2012) (quoting 29 U.S.C. § 794(a)) (internal citation omitted).

## D. Sections 1985 and 1986

"Section 1985(3) establishes a cause of action against any person who enters into a private conspiracy for the purpose of depriving the claimant of the equal protection of the laws." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981). To properly allege a civil rights conspiracy under § 1985(3), Plaintiff must allege the existence of:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

12

*Kirkland v. DiLeo,* 581 F. App'x. 111, 118 (3d Cir. 2014)
(quoting *Farber v. City of Paterson,* 440 F.3d 131, 134 (3d Cir.
2006)).

 "Section 1986 is a companion to § 1985(3) and provides the
claimant with a cause of action against any person who, knowing
that a violation of § 1985 is about to be committed and
possessing power to prevent its occurrence, fails to take action
to frustrate its execution." *Rogin*, 616 F.2d at 696. Plaintiffs
must allege: "(1) the defendant had actual knowledge of a § 1985
conspiracy, (2) the defendant had the power to prevent or aid in
preventing the commission of a § 1985 violation, (3) the
defendant neglected or refused to prevent a § 1985 conspiracy,
and (4) a wrongful act was committed." *Clark v. Clabaugh*, 20
F.3d 1290, 1295 (3d Cir. 1994). "Because transgressions of §
1986 by definition depend on a preexisting violation of § 1985,
if the claimant does not set forth a cause of action under the
latter, its claim under the former necessarily must fail also."
*Rogin*, 616 F.2d at 696.

## IV. ANALYSIS

### A. Claims Against Superior Court Judges

#### 1. Sections 1983, 1985, and 1986

 Plaintiff names two judges of the New Jersey Superior
Court, Judges Marino and Armstrong, as defendants. He alleges
Defendants Marino and Armstrong violated his Sixth and

Fourteenth Amendment rights by denying him the opportunity to retain private counsel. (Docket Entry 3 ¶¶ 69-73). He additionally alleges the judges' denial of private counsel and failure to accommodate his disability were done as retaliation after Plaintiff filed grievances against them with the Advisory Committee on Judicial Conduct. (Docket Entry 3 ¶¶ 74-78). He also alleges they inflicted cruel and unusual punishment on him. (Docket Entry 3 ¶¶ 66-68). These claims are appropriately brought under § 1983 as they are allegations of violations of Plaintiff's constitutional rights under the First, Sixth, Eighth, and Fourteenth Amendments.

In addition to his claims under § 1983, Plaintiff also alleges Judges Marino and Armstrong violated 42 U.S.C. §§ 1985 and 1986 by conspiring with Defendants Mignella and Black to derail his PCR proceedings. (Docket Entry 3 ¶¶ 79-83). He contends Defendants "'conspired against the Plaintiff for the 'sole purpose' of manufacturing a disciplinary charge" against him, (Docket Entry 3 ¶ 82), and forced him to proceed with "hand-picked," inexperienced attorneys from the public defender's office in order to cover up Defendants' violations of the ADA and various other wrongdoings by the public defender's office. (Docket Entry 3 ¶ 83).

To the extent Plaintiff seeks monetary damages against Defendants Marino and Armstrong in their official capacities,

14

those claims must be dismissed as barred by the Eleventh
Amendment. The Eleventh Amendment to the United States
Constitution provides: "The Judicial power of the United States
shall not be construed to extend to any suit in law or equity,
commenced or prosecuted against one of the United States by
Citizens of another State, or by Citizens or Subjects of any
Foreign State." U.S. Const. amend. XI. "[T]he New Jersey
Superior Court is an 'arm' of the state entitled to share in the
state's sovereign immunity." *Johnson v. State of New Jersey*, 869
F. Supp. 289, 296 (D.N.J. 1994). Thus, as Plaintiff's claims
against the judges in their official capacities are in fact a
suit against the State, *see Will v. Mich. Dep't of State Police*,
491 U.S. 58, 71 (1989); *Printz v. United States*, 521 U.S. 898,
930-31 (1997), the Eleventh Amendment bars suit for damages
absent a waiver of sovereign immunity.

Here, Congress did not expressly abrogate sovereign
immunity when it passed §§ 1983 and 1985, *see Will*, 491 U.S. at
66, and there is no indication New Jersey has consented to
Plaintiff's suit. Plaintiff's § 1983, § 1985, and § 1986[4] claims

---

[4] This claim must also be dismissed against the judges in their
official capacities as a claim under § 1986 requires a
foundational claim under § 1985. *See Clark v. Clabaugh*, 20 F.3d
1290, 1295 (3d Cir. 1994); *Rogin v. Bensalem Twp.*, 616 F.2d 680,
696 (3d Cir. 1980).

against the judges in their official capacities must be dismissed.

To the extent Plaintiff seeks money damages from the judges in their individual capacities, "[i]t is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (quoting *Mireles v. Waco*, 502 U.S. at 11, 9 (1991)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359. Judicial immunity extends to suits brought under 42 U.S.C. § 1983, *see Pierson v. Ray*, 386 U.S. 547, 553–55 (1967), as well as where it is alleged that the judge is acting as part of a conspiracy, *see Dennis v. Sparks*, 449 U.S. 24, 26-27 (1980) (finding that a judge who entered an injunction as part of an alleged conspiracy to deprive the plaintiff of property was "properly dismissed" from the suit on immunity grounds).

"[Judicial] immunity is overcome in only two sets of circumstances." *Mireles*, 502 U.S. at 11. "First, a judge is not immune from liability for nonjudicial acts, *i.e.*, actions not taken in the judge's judicial capacity." *Ibid.* In determining

16

whether an act qualifies as a "judicial act," courts looks to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectation of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12.

The actions complained of in Plaintiff's complaint fall squarely within the definition of judicial acts. Specifically, Plaintiff alleges civil rights violations resulting from Defendants Marino's and Armstrong's judicial orders and rulings, including their decisions regarding Plaintiff's request to represent himself and issuing transportation writs. These are actions that are normally performed by a judge in his or her judicial capacity and are core components of judicial decision-making and discretion. Furthermore, Plaintiff's complaint clearly indicates that he expected the judges to exercise their judicial authority on his behalf at the time he made his requests, (Docket Entry 3 ¶¶ 34-37), making it clear he dealt with the judges in their judicial capacities at the time he communicated with the court. *See Stump*, 435 U.S. at 362. Moreover, nothing in Plaintiff's complaint supports his assertion that they were acting in the "complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. Plaintiff filed motions

17

with the judge presiding over his PCR proceedings and the
Presiding Criminal Judge of the county, clearly recognizing the
judges' jurisdiction over his matter. As such, Judges Marino and
Armstrong are entitled to absolute judicial immunity on all of
Plaintiff's damages claims. *Stump*, 435 U.S. at 362.

Plaintiff has failed to set forth a cause of action for his
§ 1983 request for injunctive relief against Defendants
Armstrong and Marino.[5] Section 1983 provides that "in any action
brought against a judicial officer for an act or omission taken
in such officer's judicial capacity, injunctive relief shall not
be granted unless a declaratory decree was violated or
declaratory relief was unavailable." 42 U.S.C. § 1983. *See also
Antoine v. Byers & Anderson, Inc*., 508 U.S. 429, 433 n.5 (1993)
(noting that the rules regarding judicial immunity do not
distinguish between lawsuits brought against state officials and
those brought against federal officials); *Azubuko v. Royal*, 443
F.3d 302, 304 (3d Cir. 2006) (citing cases applying § 1983's
injunctive relief amendment to state judges as well as federal

---

[5] The Eleventh Amendment does not bar suits that seek prospective
injunctive relief to end a violation of federal law by state
officials. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also
Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health &
Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) ("The theory
behind *Young* is that a state officer lacks the authority to
enforce an unconstitutional state enactment, and thus the
officer is stripped of his official or representative character
and becomes subject to the consequences of his individual
conduct." (internal citation and quotation marks omitted)).

judges). Plaintiff's request for an injunction is based on
actions taken by the judges in their judicial capacity, and he
has not alleged that a declaratory decree was violated or that
declaratory relief is unavailable. Thus, to the extent that
Plaintiff requests an injunction against Defendants Armstrong
and Marino, the requested relief is unavailable.

As Defendants Marino and Armstrong are absolutely immune
from suits seeking money damages, Plaintiff's § 1983, § 1985 and
§ 1986 claims for damages against those defendants must be
dismissed with prejudice. As Plaintiff has not meet the standard
for injunctive relief on the presented claims, his claims for
injunctive relief are dismissed without prejudice.

### 2.    Americans with Disabilities Act

Plaintiff additionally alleges Defendants Marino and
Armstrong violated the ADA by failing "to make a reasonable
accommodation for the Plaintiff's disability by providing him .
. . the benefit of access to video teleconference equipment for
his May 29, 201[4] [PCR] hearing. . . ." (Docket Entry 1 ¶ 62).
The ADA does not create private causes of action against
individuals, *see Boggi v. Med. Review and Accrediting Council*,
415 F. App'x 411, 415 (3d Cir. 2011) (individual defendants
cannot be sued in their individual capacities under the ADA);
*Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002)
(holding there was no individual liability under Titles I, II,

19

or III of the ADA), thus, Plaintiff may only bring an ADA claim against the judges in their official capacities, where the true party in interest is the Superior Court of New Jersey.

### a. Failure to Accommodate

"[A] plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA . . . . To make out such a claim, a plaintiff must show that the accommodation he seeks is reasonable, *i.e.*, that it is 'necessary to avoid discrimination on the basis of disability.'" *Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa.*, 483 F. App'x 759, 763 (3d Cir. 2012) (quoting 28 C.F.R. § 35.130(b)(7))(internal citations omitted).

Under the ADA, Plaintiff must first set forth facts indicating he is a qualified person with a disability. 42 U.S.C. § 12132. A "qualified individual with a disability" is defined as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

28 C.F.R. § 35.104 (2015). "Disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record

of such an impairment; or being regarded as having such an impairment." 28 C.F.R. § 35.104 (2015). Plaintiff alleges he suffers from physical and mental disabilities that limit his ability to participate in life activities, *e.g.*, degenerative disc disease, spinal arthritis, and bipolar disorder, for which he receives accommodations such as restrictions on the use of stairs, no recreation, and the use of a walker, cane, and wheelchair. (*See* Docket Entry 3 ¶¶ 10-11). Plaintiff has therefore alleged sufficient facts for this Court to find for screening purposes that he is a qualified person with a disability.

The complaint fails on the third factor as Plaintiff has not sufficiently pled he was excluded from the benefits of a public entity's services, programs, or activities. Plaintiff alleges that the state court failed to accommodate his disabilities by denying him video-conferencing equipment for his May 29, 2014 PCR hearing. The communications from the state court as depicted in the complaint, however, indicate that the hearing was in fact adjourned and rescheduled for the specific purpose of permitting Plaintiff to utilize video-conferencing. (Docket Entry 3 at ¶¶ 45, 47). Plaintiff admits in his complaint that the PCR hearing took place on August 22, 2014, at which time he was permitted to appear via video-conferencing and to confer with his appointed counsel via video-conferencing

21

conferencing prior to the hearing. (Docket Entry 3 ¶¶ 54-55).
Nothing in the complaint indicates that Plaintiff was unable to
participate in his PCR proceedings in the manner a non-disabled
individual could because he was not provided with video-
conferencing. *See Muhammad v. Court of Common Pleas of Allegheny
Cnty., Pa.*, 483 F. App'x 759, 764 (3d Cir. 2012). Indeed, the
complaint reflects he *received* his requested accommodation.
Plaintiff has therefore failed to sufficiently plead a failure
to accommodate claim under the ADA.

### b. Rehabilitation Act Claim

Plaintiff also alleges Defendants Armstrong and Marino
violated § 504 of the RA due to their alleged failure to
accommodate his disability. Nothing in Plaintiff's complaint
suggests the New Jersey state courts are a recipient of federal
financial assistance, which was an essential element of an RA
claim. Therefore Plaintiff has failed to state a claim for
violations of the Rehabilitation Act. 29 U.S.C. § 794(a).

### c. Intentional Discrimination

Plaintiff also alleges the preparation of a writ of
transportation for May 23, 2014, constituted intentional
discrimination under the ADA. (Docket Entry 3 ¶ 67).[6] He alleges

---

[6] Plaintiff asserts Defendant Armstrong engaged in "disparate
treatment" under Section 504 of the RA. As noted *supra* Part
IV.A.2.b, Plaintiff has failed to sufficiently plead a violation

that ordering his physical presence at the hearing "clearly illustrates the said Defendant(s) disregard for the Plaintiff's exculpatory medical problems and debilitating pain and suffering he was experiencing . . . further illuminates the said Defendant(s) blatant disregard for the Plaintiff's physical disability/handicap . . . ." (Docket Entry 3 ¶ 67). Plaintiff asserts that as a result, he suffered "unnecessary or intentional pain and suffering and emotional trauma . . . ." (Docket Entry 3 ¶ 94).

The Court infers from the complaint that Plaintiff is alleging Defendants Armstrong and Marino intentionally discriminated against him by displaying deliberate indifference to his disability. *See S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (holding plaintiffs bringing claims under the ADA may establish intentional discrimination with a showing of deliberate indifference). The Third Circuit has adopted a two-part test for deliberate indifference in ADA claims: "((1) *knowledge* that a federally protected right is substantially likely to be violated . . . , and (2) *failure to act* despite that knowledge." *Id.* at 265 (emphasis in original).

---

of the RA as he has not alleged the New Jersey courts receive federal funds.

23

"Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person. However, deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction." *Ibid.* (internal citations and quotation marks omitted). Furthermore, "[d]eliberate indifference requires *actual knowledge*; allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." *Id.* at 266 n.26 (quoting *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012)) (emphasis in original); *see also K.K. ex rel. L.K. v. Pittsburgh Pub. Sch.*, 590 F. App'x 148, 153 (3d Cir. 2014).

Plaintiff has not sufficiently pled that Defendant Armstrong had actual knowledge that there was a substantially likely possibility that Plaintiff's federally protected rights would be harmed by issuing a transportation writ.[7] Plaintiff indicates he mailed several motions and documents to the court describing his disability and reasons for his video-conferencing request, (Docket Entry 3 ¶¶ 33-35); however, he also indicates a call to the Criminal Division on May 15, 2014 revealed those submissions were not filed with the court and were instead

---

[7] Plaintiff indicates Defendant Armstrong signed the transportation writ, (Docket Entry 3 ¶ 40), therefore Defendant Marino cannot have shown deliberate indifference in the issuance of the writ as Plaintiff has pled no facts to suggest she was personally involved.

24

referred to his attorney, (Docket Entry 3 ¶¶ 36(e), 45).
Plaintiff also states in his complaint that communications from
court specifically stated it did not expect Plaintiff to be
present on May 29, 2014, as that hearing date had been adjourned
in order to address difficulties with the video-conferencing
technology. (Docket Entry 3 ¶¶ 44-45). There are therefore
insufficient facts for this Court to reasonably conclude that
Defendant Armstrong actually knew that Plaintiff's rights were
likely to be violated.

Likewise, the complaint fails to sufficiently allege
Defendants purposefully ignored that risk. According to the
complaint, all of the communications the state court sent to
Plaintiff indicated that it did not expect Plaintiff to be
transported on May 29, 2014. (Docket Entry 3 ¶¶ 44-45, 47).
Plaintiff's conclusory allegations that Defendants' actions can
only be explained by ill will, (Docket Entry 3 ¶ 68), as opposed
to negligence or bureaucratic inaction, are insufficient under
*Iqbal*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice.").

Even accepting the facts alleged in the complaint as true,
there are insufficient facts that would support a plausible
claim that the judges intentionally discriminated against
Plaintiff because of his disability. As Plaintiff may be able to

allege facts that address the noted deficiencies, he shall be permitted to file a motion for leave to amend, which must be accompanied by a proposed amended complaint.[8]

### d. Injunctive Relief

Plaintiff has also not pled sufficient facts to warrant injunctive relief in the form of an order requiring the state courts to utilize video-conferencing in Plaintiff's state court proceedings. Plaintiffs requesting prospective injunctive relief "must allege a real and immediate threat of future injury." *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 478 (D.N.J. 2001) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983)). "Allegations of exposure to illegal conduct in the past alone, without a showing of continuing adverse effects, do not demonstrate a case or controversy entitling a plaintiff to prospective injunctive relief." *Id.* at 479 (internal citations omitted). A plaintiff must be able to show that a real and

---

[8] Plaintiff should note that when a motion for leave to amend is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.* The amended complaint may *not* adopt or repeat claims that have been dismissed with prejudice by the Court.

imminent harm will occur; a mere possibility of future harm will not suffice. *ZF Meritor, LLC v. Eaton Corp.,* 696 F.3d 254, 300–01 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2025 (2013).

Nothing in the complaint suggests the state courts, having already permitted Plaintiff to appear via video-conferencing, will deny Plaintiff that ability in the future. Plaintiff's request for an injunction must be denied at this time.

### 3. Review

To review, Plaintiff's constitutional claims under § 1983 and conspiracy claims under § 1985 and § 1986 for which he seeks damages must be dismissed against Defendants Marino and Armstrong as they are immune from suit in their official capacities, and are entitled to absolute judicial immunity in their individual capacities. 28 U.S.C. § 1915A(b)(2). Plaintiff's request for injunctive relief under § 1983 must also be dismissed as he has not alleged a declaratory decree was violated or declaratory relief was unavailable. 28 U.S.C. § 1915A(b)(1).

Plaintiff's claims under Title II of the ADA against the New Jersey state courts seeking monetary and injunctive relief are dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

**B. Claims against Public Defenders**

    **1.   Section 1983**

    Plaintiff alleges his public defenders Anthony Mignella and Raymond Black assigned inexperienced attorneys to his post-conviction relief proceedings in retaliation for Plaintiff filing grievances with the ethics committee and Somerset County Sheriff's Office. (Docket Entry 1 ¶¶ 74-78).

    In *Polk Co. v. Dodson*, the Supreme Court held that a public defender, although paid and ultimately supervised by the state, "does not act under color of state law when performing the traditional functions of counsel to a criminal defendant." 454 U.S. 312, 325 (1981). *See also Vermont v. Brillon*, 556 U.S. 81, 91 (2009) ("Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (private attorneys were not acting under color of state law when they issued subpoenas); *Calhoun v. Young*, 288 F. App'x. 47, 49-50 (3d Cir. 2008) (public defender representing criminal defendant is not acting under color of state law); *Thomas v. Howard*, 455 F.2d 228 (3d Cir. 1972) (court-appointed pool attorney does not act under color of state law).

Therefore, because it appears that Defendants Black and Mignella were not acting under color of state law,[9] Plaintiff's § 1983 claims against them must be dismissed with prejudice.

**2. Sections 1985 and 1986**

Plaintiff further alleges Defendants Black and Mignella conspired with Defendants Marino and Armstrong, and others to deprive him of his right to the PCR counsel of his choice in violation of the Sixth and Fourteenth Amendment. (Docket Entry 3 ¶ 70).

Prisoners do not have a federal constitutional right to counsel when mounting collateral attacks upon their convictions. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600, 616 (1974) (holding Fourteenth Amendment does not require states to provide counsel in state discretionary appeals); *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or

---

[9] Assuming without deciding that conspiring with Defendants Armstrong and Marino made Defendants Black and Mignella "state actors" for purposes of a § 1983 conspiracy claim, Plaintiff does not set forth a viable conspiracy to violate a federal right for the reasons set forth *infra* Part IV.B.2. *See Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) ("To make out a conspiracy claim under § 1983, [Plaintiff] must show that 'persons acting under color of state law conspired to deprive him of a federally protected right.' As a threshold matter, however, a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999))).

incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). The Supreme Court's "cases establish that the right to appointed counsel extends to the first appeal of right, and no further." *Finley*, 481 U.S. at 555. Plaintiff, therefore, has no right under the Sixth or Fourteenth Amendments to counsel in his PCR proceedings, and Defendants cannot have conspired to violate a constitutional right that does not exist. Plaintiff has therefore failed to set forth a claim upon which relief may be granted, 28 U.S.C. § 1915A(b)(1).[10]

### 3. Review

As Defendants Black and Mignella are not state actors within the meaning of § 1983, and Plaintiff has failed to set forth a conspiracy claim upon which relief may be granted, 28 U.S.C. § 1915A(b)(1), Plaintiff's claims against these defendants must be dismissed.[11]

---

[10] Moreover, it would be wholly improper to adjudicate this claim as Plaintiff's PCR proceedings are ongoing in state court. "[F]ederal courts must abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding." *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).
[11] The Court further notes that the complaint is utterly silent as to any involvement by Defendant Black, which in and of itself requires the dismissal of all of Plaintiff's claims against him.

## C. Claims against Prison Officials

Although Plaintiff does not formally name various officials at South Woods State Prison as defendants in the caption of his complaint, the body of the complaint and the relief requested suggests he is attempting to bring claims against them as well as the named defendants.

### 1. Sections 1985 and 1986

Plaintiff alleges unidentified prison officials conspired with Defendants Marino and Armstrong "for the 'sole purpose' of manufacturing a disciplinary charge, which the Plaintiff received for his inability to access non-ADA-accessible transportation due to his handicap and/or medical problems for his May 23, 2014 court trip . . . ." (Docket Entry 3 ¶ 82). "The purpose of the above manufactured institutional infraction against the Plaintiff was to eradicate the May 23, 2014, ADA-violation against the Defendant(s), RUBHC and/or SWSP to conceal 'wrongdoings' and/or to avoid future litigation by the Plaintiff." (Docket Entry 3 ¶ 83).

"Despite its application to private conspiracies, § 1985(3) was not intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'" *Farber v. City of Paterson,* 440 F.3d 131, 135 (3d Cir. 2006) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)). In order to properly

plead a conspiracy under § 1985, a plaintiff must allege facts that plausibly suggest "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin, 403* U.S. at 102. "[A] plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber*, 440 F.3d at 135.

Plaintiff has not sufficiently alleged a conspiracy under § 1985 as he has not alleged "the conspiracy was motivated by discriminatory animus against an identifiable class . . . ." *Ibid.* He instead alleges the conspiracy was motivated by Defendants' desire to cover up their past misconduct or to prevent further litigation, neither of which is sufficient to state a claim under § 1985(3). *See Hamilton v. Lajoie*, 660 F. Supp. 2d 261, 266 (D. Conn. 2009)(holding inmate's failure to allege that officers' misconduct was motivated by race- or class-based discriminatory animus, rather than desire to conceal their own misconduct, was insufficient under § 1985(3)).[12]

As it is possible that Plaintiff may be able to supplement his complaint with facts sufficient to overcome the deficiencies

---

[12] SWSP is not a "person" within the meaning of § 1985 and is entitled to Eleventh Amendment immunity. In the event Plaintiff seeks to amend this claim, he must name persons who are subject to suit.

noted herein, he shall be given leave to amend these claims. *See*
*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d
Cir.2002).

## 2. Americans with Disabilities Act

Plaintiff further alleges SWSP violated the ADA by not
providing him with an ADA-compliant vehicle to travel to his
court sessions, by placing him in a non-accessible cell, and by
denying him the use of a walker in his cell to assist him in
using the toilet in the absence of the rails that would be in an
accessible cell. (Docket Entry 3 ¶¶ 88(c)-89). Plaintiff
indicates he suffered severe pain and emotional trauma as a
result of the jail's actions. (Docket Entry 3 ¶¶ 92-94).

Plaintiff has sufficiently alleged a failure to accommodate
claim under the ADA as against SWSP.[13] The Court shall therefore
order SWSP added to the caption as a Defendant, and summons
shall issue.[14]

---

[13] "State prisons fall squarely within the statutory definition
of 'public entity,' which includes 'any department, agency,
special purpose district, or other instrumentality of a State or
States or local government.'" *Pa. Dep't of Corr. v. Yeskey*, 524
U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B)).
[14] To the extent Plaintiff has raised claims under the RA, those
claims must be dismissed as Plaintiff has not alleged SWSP is a
recipient of federal funds. *Muhammad v. Court of Common Pleas of
Allegheny Cnty., Pa.*, 483 F. App'x 759, 762-63 (3d Cir. 2012)
(quoting 29 U.S.C. § 794(a)).

### 3. Section 1983 Claims

Plaintiff appears to assert numerous § 1983 claims against SWSP, including retaliation, denial of adequate medical care, and interference with the mail. The Court must dismiss these claims at this time as a jail is not a "person" amenable to suit under § 1983. *See, e.g., Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983). Accordingly, this Court will dismiss with prejudice all § 1983 claims asserted against SWSP. Plaintiff may, however, move for leave to amend these claims by naming persons subject to suit and addressing the deficiencies noted herein. *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 114 (3d Cir. 2002).

### a. Denial of Medical Care

In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Plaintiff alleges that due to the failure to provide him with either an ADA-accessible cell or a walker, he experienced severe pain after using the toilet. (Docket Entry 3 ¶ 92). He further alleges he experienced rectal bleeding and "a long delay in

34

urinating and/or uncontrolled urinating" due to the lack of accommodations. (Docket Entry (Docket Entry 3 ¶ 92). He alleges two "sick call slips" were ignored when he attempted to get care for his conditions. (Docket Entry 3 ¶ 92).

Although Plaintiff sufficiently alleges a serious medical need, he fails to set forth enough facts supporting an inference of deliberate indifference. Plaintiff suggests that "*[p]erhaps*, medical's failure to treat and/or neglect towards the Plaintiff's medical problems in 'detention was fueled and navigated by retaliatory treatment and/or sadistic and malicious conduct or conspired with Defendant(s) to cause the Plaintiff harm." (Docket Entry 3 ¶ 92) (emphasis added). This supposition is insufficient under *Iqbal* to survive summary screening. *See Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). In the event Plaintiff seeks to amend this claim, he must set forth specific facts supporting an inference of deliberate indifference.[15]

---

[15] Deliberate indifference is more than mere negligence, and may be found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. *See Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999))

### b. Retaliation

Plaintiff's retaliation claim likewise fails for failure to plead sufficient facts beyond his conclusory statement that "perhaps" the denial of medical care was retaliatory. (Docket Entry 3 ¶ 92).

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution . . . ." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990); *see also Mitchell v. Horn*, 318 F.3d 523, 529–31 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001); *Allah v. Seiverling*, 229 F.3d 220, 224–26 (3d Cir. 2000). To prevail on a retaliation claim, Plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225).

It is unclear from the face of the complaint as to what Plaintiff asserts is the constitutionally-protected activity he engaged in that resulted in the retaliation. In the event Plaintiff seeks to amend this claim, he must set forth specific facts regarding the constitutionally-protected activity he

engaged in, as well as facts supporting an inference that the activity was a "substantial or motivating factor" in the relevant person's or persons' decision to deny him medical care.

### c. Mail Tampering

In his complaint and several letters to the Court, Plaintiff alleges unidentified persons at SWSP are tampering with his mail and preventing his correspondence with this Court and former attorney. (*See, e.g.*, Docket Entries 1, 3, 4, 5, 8, and 11).

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests. *See Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989); *Turner v. Safley,* 482 U.S. 78, 89 (1987). The complaint and documents submitted with it, (Docket Entry 4), fail to plead sufficient facts to raise Plaintiff's claims beyond mere speculation. The Court has received all of Plaintiff's correspondence to date.[16] (*See* Docket Entry 11 at 2). Plaintiff must provide more than his "belief" that his mail is being opened and tampered with. (Docket Entry 4

---

[16] To the extent there was a delay in the receipt of the initial complaint, such delay is likely attributable to the fact that Plaintiff mailed his complaint to a Senior District Judge's Newark Chambers with the instructions to mail it to the Camden Clerk's Office for filing, in violation of the Rules of Court and Federal Rules of Civil Procedure. (Docket Entry 4 at 2-3).

at 8).[17]  Without more, Plaintiff's mail tampering claim cannot go forward at this time.

### 4. Review

To review, Plaintiff's claims under §§ 1983, 1985, and 1986 are dismissed with prejudice against SWSP as it is not a person amenable to suit. Plaintiff has failed to state a claim against individual officials, 28 U.S.C. § 1915A(b)(1), however he may move to amend these claims to name individual officials by filing a proposed amended complaint with his motion that addresses the deficiencies noted by the Court.

Plaintiff's ADA complaint against SWSP may proceed at this time. Summonses shall issue, and SWSP shall be ordered to show cause why an injunction should not issue.

### D. Motion for Appointment of Counsel

Plaintiff has also submitted a motion for the appointment of counsel. (Docket Entry 6). Based on the relevant factors, the Court will grant the motion.

Plaintiff seeks the appointment of counsel under 28 U.S.C. § 1915(e), which provides that "[t]he court may request an attorney to represent any person unable to afford counsel." 28

---

[17] The attachment to Plaintiff's complaint lists several letters sent via Certified Mail that he claims are evidence of mail tampering because he did not receive a response. (Docket Entry 4 at 9). The United States Post Office's tracking service, *available at https://tools.usps.com/go/TrackConfirmAction_input*, indicates all of the letters were delivered.

U.S.C. § 1915(e)(1). Appointment of counsel is a privilege, not a statutory or constitutional right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011). Courts, in deciding whether to appoint pro bono counsel, first must consider whether plaintiff's claim "has some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir.1993) (quotation omitted). If the court finds that it does, the court should consider the following factors:

> (1) the plaintiff's ability to present his or her own case;
>
> (2) the complexity of the legal issues;
>
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
>
> (4) the amount a case is likely to turn on credibility determinations;
>
> (5) whether the case will require the testimony of expert witnesses;
>
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir.1997) (citing *Tabron*, 6 F.3d at 155–56, 157 n.5). This list of factors is not exhaustive, nor is a single factor determinative. *Id.* at 458. Instead, the factors serve as guideposts for district courts to ensure valuable attorney time is not "wasted on frivolous cases." *Ibid.*

39

Plaintiff indicates he is unable to afford counsel as he has only $900.00 remaining in his inmate account due to legal expenses incurred. (Docket Entry 6 ¶ 8(d)). Plaintiff's indigency, however, is not sufficient to warrant counsel in and of itself. Many pro se plaintiffs are indigent, yet are denied pro bono counsel. The Court considers this factor to be neutral.

As noted in this Opinion, the Court has determined Plaintiff's ADA claims against SWSP have sufficient merit to withstand screening. This factor weighs in favor of appointing counsel. Additionally, the remaining factors weigh heavily in Plaintiff's favor. ADA claims are complex and will doubtlessly require significant discovery regarding the reasonableness of Plaintiff's requested accommodations, etc. Expert testimony may also be needed given the nature of the claims. Plaintiff is unlikely going to be able to pursue these claims without the help of counsel, especially considering the state of his health.[18] These factors weigh heavily in favor of granting Plaintiff's motion.

---

[18] The Court takes notice of the fact that it previously appointed counsel to represent Plaintiff in *Owens v. Volunteers of America Dela. Valley Promise*, No. 08-4612 (JBS-AMD), Mem. Op. and Order of 7/30/2012; Docket Entries 74 and 75, pursuant to *Powell v. Symons*, 680 F.3d 301 (3d Cir. 2012) (holding district court had sua sponte responsibility to duty to inquire into the competency of an unrepresented party in certain circumstances). The Court finds counsel is appropriate in this matter for the same reasons set forth in that Opinion and Order. (*See also* Docket Entry 6 ¶ 8(a)).

As the factors significantly weigh in favor of appointing counsel, Plaintiff's motion shall be granted.

**V.   CONCLUSION**

For the reasons stated above, Plaintiff's ADA claims against SWSP shall be permitted to proceed, and summonses shall issue. The remainder of Plaintiff's claims are dismissed. Plaintiff's motion to appoint counsel is granted.  An appropriate order follows.


 **March 22, 2016**                           **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             Chief U.S. District Judge